## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ESTATE OF STEVEN LANE, | Civil No. 14-3277 (JRT/LIB) |
| Plaintiff, | |
| v. | |
| CMG MORTGAGE, INC., *d/b/a CMG Financial*, FLAGSTAR BANK, and ALL OTHER PERSONS OR ENTITIES UNKNOWN, CLAIMING ANY RIGHT, TITLE, ESTATE, INTEREST OR LIEN IN THE REAL ESTATE DESCRIBED IN THE COMPLAINT HEREIN, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| Defendants. | |

Andrew B. Kalis, **RYAN & BRUCKER, LTD.**, 201 Minnesota Avenue North, P.O. Box 388, Aitkin, MN 56431; and Carl G. Peterson and Erik F. Hansen, **BURNS & HANSEN**, 8401 Wayzata Boulevard, Suite 300, Minneapolis, MN 55426, for plaintiff.

Donald Chance Mark, Jr. and Tyler P. Brimmer, **FAFINSKI MARK & JOHNSON, PA**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344; and Jason E. Goldstein, **BUCHALTER NEMER**, 18400 Von Karman Avenue, Suite 800, Irvine, CA 92612, for defendant CMG Mortgage, Inc.

David A. Snieg and Michael A. Ponto, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendant Flagstar Bank.

This is an action brought by the Estate of Steven Lane ("the Estate") against

Defendants CMG Mortgage, Inc. ("CMG") and Flagstar Bank ("Flagstar"). Flagstar

possesses a mortgage against Lane's home in Aitken, Minnesota ("the Property"). In

2013, Steven Lane ("Lane") attempted to refinance that mortgage with CMG but became ill and was unable to complete the transaction himself.  Lane had filled out a general power of attorney form in 2009, naming his daughter, Kathleen M. Christy ("Christy"), as his attorney-in-fact.  She attempted to close the refinancing using the general power of attorney, but CMG refused, demanding a specific power of attorney.  Lane passed away before a specific power of attorney was drafted, leaving the refinancing transaction unfinished and the Estate unable to make the mortgage payments on the Property.  In November 2014, Flagstar sold the Property at a foreclosure sale.  The Estate now seeks monetary damages and injunctive relief, arguing that CMG violated an agreement to refinance the mortgage.

This matter is now before the Court on both defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the Court finds that the complaint does not allege any actual wrongdoing against Flagstar, the Court will grant Flagstar's motion and dismiss the complaint as to Flagstar.  Accepting as true all facts alleged in the complaint, the Court finds that the Estate's claims against CMG are either barred by statute or do not allege sufficient facts to state a claim on which relief may be granted.  Therefore, the Court will also grant CMG's motion to dismiss.

## BACKGROUND

### I.   POWER OF ATTORNEY

On July 8, 2009, Steven Lane filled out a form to execute a statutory power of attorney naming his children, Corey D. Lane and Kathleen M. Christy, as his attorneys-

in-fact.  (Notice of Removal, Ex. A ("Compl.") ¶ 8, Aug. 27, 2014, Docket No. 1.)  This form, entitled "Statutory Short Form Power of Attorney Minnesota Statutes, Section 523.23," is included as an exhibit to the Estate's complaint.  (*Id.*, Ex. A.)  The form includes a field labeled "Specimen Signature of Attorney-in-Fact," but the field is blank and does not contain any signatures.  (*Id.* at 18.)  The field for an optional expiration date is also blank.  (*Id.* at 16.)

The form lists several powers that a Principal may grant to an attorney-in-fact. The first of those powers is "real property transactions."  (*Id.* at 17.)  Lane placed an "X" next to this power.  (*Id.*)  He did not limit the power in any way or specify any particular real property transactions on the form.  Among other powers, Lane also placed an "X" next to "banking transactions."  (*Id.*)

## II.    MORTGAGE REFINANCING NEGOTIATIONS

Lane purchased the Property – located in Aitkin, Minnesota – in 1992.  (Compl. ¶ 7.)  Flagstar possesses a mortgage against the Property.  (*Id.*)  In 2013, Lane, a veteran of the United States Army, began working to refinance his mortgage loan through the United States Department of Veterans' Affairs ("the VA").  (*Id.* ¶¶ 9-10.)  CMG was to be the lender in the refinancing transaction.   (*Id.* ¶ 11.)  If the refinancing had been completed, the monthly mortgage payments for the Property would have been reduced from $1,228.31 to $846.45.  (*Id.* ¶ 12.)

Lane was never able to close the refinancing.  In May 2013, he was diagnosed with esophageal cancer.  (*Id.* ¶ 13.)  He planned to undergo surgery in September 2013

and asked Christy, his daughter and attorney-in-fact, to close the refinancing transaction

if he was not able to do so himself.  (*Id.* ¶ 14.)  Lane underwent surgery on September 23,

2013, suffered various complications, and was sedated for approximately six weeks.  (*Id.*

¶ 15.)

During the period that Lane was sedated following his surgery, a loan officer

named Justus Koelliker[1] contacted Christy about the refinancing transaction.  (*Id.* ¶ 16.)

Koelliker is described in the complaint as "the loan officer who was helping Lane with

his home refinance transaction."  (*Id.* ¶ 16.)  In his correspondence with Christy, he is

identified as a Mortgage Loan Officer for Flagship Financial Group, LLC, which is a

company that serves as "a broker for mortgage loans."  (*Id.*, Ex. B at 20.)  As such,

Koelliker was not an agent of CMG or Flagstar.

On October 6, 2013, Christy initiated email correspondence with Koelliker and

updated him on Lane's health condition.  (*Id.*, Ex. B at 27-28.)  Christy informed

Koelliker that she had power of attorney, and inquired whether she could close the

refinancing for Lane.  (*Id.*, Ex. B at 26-27.)  In response, Koelliker requested on

October 9 that Christy send him a copy of the power of attorney so that he could forward

it on to the lender for approval.  (*Id.* ¶ 18; *id.*, Ex. B at 26.)  On October 10, 2013,

Koelliker informed Christy that he "received a full approval on the loan from the lender

last night" but still needed the power of attorney and repeated his request from the

previous day that she send it to him.  (*Id.*, Ex. B at 24.)  Christy subsequently provided

---

[1] The complaint refers to the loan officer as "Koeliker."  Because email correspondence
between the loan officer and Christy indicates that the officer spells his own name "Koelliker,"
the Court will use the "Koelliker" spelling.  (Compl., Ex. B.)

Koelliker with the Statutory Short Form Power of Attorney document that Lane executed in 2009.  (*Id.* ¶ 18.)

Later the same day, Koelliker informed Christy that the lender was requesting an updated power of attorney specific to the transaction.  (*Id.*, Ex. B at 23-24.)  Koelliker quoted the lender as saying the following: "The power of attorney provided was issued back in 2009.  We require current power of attorney, specific to our transaction, with address, CMG as lender, and loan # required.  Also, the borrower is retired, why is he using power of attorney, and who are the people that are listed?"  (*Id.*)  In light of CMG's request for a power of attorney specific to the refinancing transaction, Koelliker suggested that Christy have Lane execute a new power of attorney.  (*Id.*)  Christy expressed that she was unwilling to acquire one because she would "look a little shady in the ICU with a notary having [Lane] sign documents" shortly after his surgery.  (*Id.*, Ex. B at 22-23.)  She did not challenge CMG's refusal to accept the power of attorney she provided at that time.  (*See id.*)  Instead, she told Koelliker that "[a]s of now, I would say the loan will have to go back to underwriting," and she would contact him when Lane's health improved enough that he was ready and able to close the loan.  (*Id.*, Ex. B at 22-23.)  Lane passed away one month later, on November 11, 2013.  (*Id.* ¶ 22.)  He did not execute a different power of attorney form prior to his death.  (*Id.*)

On January 9, 2014, two months after her father's death, Christy sent Koelliker an email insisting that the refusal to accept the power of attorney she provided was in violation of Minnesota Statute § 523.23.  (*Id.*, Ex. B at 21.)  The Estate became unable to afford the monthly payments for the Property.  (*Id.* ¶ 23.)  In August 2014, Flagstar

initiated a foreclosure proceeding for the Property and subsequently sold the property at a foreclosure sale on November 6, 2014.  (Pl.'s Req. for Judicial Notice, Ex. A (Notice of Mortgage Foreclosure Sale), Sept. 26, 2014, Docket No. 22.)

## III.    PROCEDURAL HISTORY

The Estate filed a complaint against CMG and Flagstar on July 15, 2014.[2] (Compl.)  The complaint alleges that CMG was not within its rights when it refused the power of attorney Christy provided.  (*See id.*)  There are eight counts: breach of contract, unjust enrichment, promissory estoppel, specific performance, injunction/injunctive relief, equitable estoppel/declaratory judgment, breach of fiduciary duty, and violation of Minnesota Statute § 523.20, which establishes a cause of action for refusing the authority of an attorney-in-fact to act on a principal's behalf.  (*Id.* ¶¶ 25-107.)  The Estate seeks monetary damages, specific performance as to the closing of the refinancing, and an injunction against foreclosure on the mortgage and Property.  (*See id.*)  On August 27, 2014, CMG removed the action to federal court.  (Notice of Removal.)

Flagstar filed a motion to dismiss on September 2, 2014.  (Def. Flagstar's Mot. to Dismiss, Sept. 2, 2014, Docket No. 12.)  Three days later, CMG also moved to dismiss. (Def. CMG's Mot. to Dismiss, Sept. 5, 2014, Docket No. 15; Def. CMG's Req. for Judicial Notice in Supp. of Notice of Mot. & Mot. to Dismiss the Compl. Pursuant to

---

[2] The complaint is also addressed to "all other persons or entities unknown, claiming any right, title, estate, interest or lien in the real estate described in the Complaint herein," but no claims are asserted against any other persons or entities.  (Compl. at 3.)

Federal Rule of Civil Procedure 12(b)(6) ("CMG's Req. for Judicial Notice"), Sep. 5, 2014, Docket No. 17.)  This matter is now before the Court on both motions to dismiss.

## ANALYSIS

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).  Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### II.   CMG'S MOTION TO DISMISS

CMG moves to dismiss all eight counts brought against them.  The Court will grant CMG's motion to dismiss Counts I, III, VII, and VIII, because they are barred by

the Minnesota Credit Agreement Statute.  The Court will also dismiss Counts IV and V

for failure to state an independent cause of action, and Counts II and VI for failure to

state a plausible claim on which relief may be granted.[3]

### A.       Minnesota Credit Agreement Statute

### 1.       Writing Requirement in Section 513.33

Under the Minnesota Credit Agreement Statute, "[a] debtor may not maintain an

action on a credit agreement unless the agreement is in writing, expresses consideration,

sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."

Minn. Stat. § 513.33, subd. 2.  "A credit agreement within the meaning of § 513.33 is 'an

agreement to lend or forbear repayment of money, goods, or things in action, to otherwise

extend credit, or to make any other financial accommodation.'"  *St. Jude Med. S.C., Inc.

v. Tormey*, 779 F.3d 894, 900 (8th Cir. 2015) (quoting Minn. Stat. § 513.33, subd. 1).

Therefore, a "mortgage agreement constitutes a credit agreement as defined by Minn.

---

[3] CMG argues that the Estate's entire complaint is preempted by a pamphlet ("VA Pamphlet 26-7") produced by the VA.  VA Pamphlet 26-7 requires that a loan transaction conducted through the VA must include a specific power of attorney discussing the details of the transaction, if the veteran is not personally able to complete the transaction.  (CMG's Req. for Judicial Notice, Ex. 4 (VA Pamphlet 26-7) at 30-32.)  CMG maintains that VA regulations trump state law where the two conflict.  *United States v. Shimer*, 367 U.S. 374, 377 (1961) ("The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system for determining the Administration's obligation as guarantor, which in its operation would displace state law."); *Connelly v. Derwinski*, 961 F.2d 129, 130 (9th Cir. 1992).  CMG is correct that a federal statute or regulation would trump contrary state law, but VA Pamphlet 26-7, which is part of the VA's current Lenders Handbook, is not a regulation contained within the Code of Federal Regulations.  It is merely a VA policy.  CMG cites no support for the position that a VA policy handbook has the same supremacy effect as a federal statute or regulation.  Therefore, the Court will not find that VA Pamphlet 26-7 preempts the relevant Minnesota statutes.

Stat. § 513.33, subd. 1." *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1108-09 (D. Minn. 2011).

The complaint makes repeated reference to an agreement between the parties to refinance Lane's mortgage. The complaint does not, however, allege the existence of a signed writing. CMG argues that there is no agreement in writing, signed by the parties, and therefore the Estate may not maintain an action as to the alleged mortgage refinancing agreement.

In opposition to CMG's motion, the Estate argues that CMG approved Lane's loan application in writing, but there is no such allegation in the complaint, nor does the Estate explain in its briefing what that writing might be. The only potentially relevant writings the Court is able to ascertain from the complaint and related materials are Lane's application to refinance the mortgage and the emails between Christy and Koelliker. The emails between Christy and Koelliker cannot satisfy the Minnesota Credit Agreement Statute, as CMG is not a party to the communications. Although Lane's application for refinancing was in writing, there is no indication that it was signed by CMG or that it obligated CMG to accept Lane's general power of attorney to finalize the transaction. Thus, the Court will not construe the application as a signed writing sufficient to satisfy § 513.33. Because the complaint does not allege the existence of a signed writing, the Court will dismiss the Estate's actions based on the alleged agreement. The Court must next determine which actions are barred by the statute.

## 2.    Barred Claims Under Section 513.33

Some of the Estate's claims do not require the existence of a signed writing and thus would not be barred by Minnesota Statute § 513.33.  Specifically, the claims the Court finds are barred by § 513.33 because they are based on the parties' alleged agreement are: Count I (breach of contract), Count III (promissory estoppel), and Count VII (breach of fiduciary duty).[4]  Each of these actions is grounded in the allegation that CMG violated an agreement or contract between the parties.

First, a breach of contract action is squarely "an action on a credit agreement," as the claim alleges a violation of the underlying credit agreement.  *See Rogers v. Bank of Am., N.A.*, No. 13-1698, 2014 WL 2968900, *7 (D. Minn. July 1, 2014) (internal quotation marks omitted).  In this case, the complaint alleges that "Mr. Lane and Defendant CMG entered into a contract to refinance Mr. Lane's loan against the Property," and that "[b]ecause Defendant CMG breached the contract between itself and Mr. Lane, the Estate cannot afford the monthly payments for the Property and will lose ownership of the Property."  (Compl. ¶¶ 26, 33.)  Because Count I is an action on a credit agreement and the Estate "has produced no writing [memorializing the agreement], either signed or unsigned," the Court finds that "[t]he credit statute of frauds thus bars [the

---

[4] CMG argues that the Estate's equitable estoppel claim is also barred by the Minnesota Credit Agreement Statute.  The Court finds that the statute does not bar an equitable estoppel claim, however, as "[e]quitable estoppel is a type of equitable doctrine applicable not only to the statute of frauds but also to any of a number of different claims and defenses." *See Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 594 (Minn. 1975).  As such, it is not barred by a lack of agreement in writing under Minnesota Statute § 513.33.

Estate]'s breach-of-contract claim." *Benson v. Wells Fargo Bank, N.A.*, No. 12-1213, 2013 WL 4521173, at *2 (D. Minn. Aug. 27, 2013).

The Court will also dismiss Count III, the promissory estoppel claim, on the grounds that it is barred by Minnesota Statute § 513.33. "Under Minnesota law, oral promises which constitute a credit agreement within the ambit of § 513.33 cannot be enforced under a theory of promissory estoppel; the promises must be in writing." *Tormey*, 779 F.3d at 901; *see also Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014) ("[T]he complaint in substance alleges a claim of promissory estoppel," which "is barred by the Minnesota Credit Agreement Statute."). "Minnesota courts have held that plaintiffs are barred from asserting a promissory estoppel claim where they lack a sufficient writing under Minn. Stat. § 513.33, subd. 2. If plaintiffs could assert promissory estoppel claims in such situations, they could make an easy end-run around the Minnesota Credit Agreement Statute." *Labrant v. Mortg. Elec. Registration Sys., Inc.*, 870 F. Supp. 2d 671, 677 (D. Minn. 2012) (internal quotation marks omitted). Accordingly, the Court finds that the Estate's promissory estoppel claim is barred by Minnesota Statute § 513.33.

Finally, the Court concludes that § 513.33 bars the Estate's breach of fiduciary duty claim. As with the Estate's breach of contract claim, the fiduciary duty claim asserts that "Mr. Lane and Defendant CMG entered into a contract to refinance Mr. Lane's loan against the Property." (Compl. ¶ 87.) The Estate alleges that this contract imposed upon CMG a fiduciary duty to "act in a manner that would best protect and further the Estate's interest in the Property and to close the transaction that Mr. Lane attempted to complete

during his life." (*Id.* ¶ 95.)  Because the Estate asserts no source for CMG's fiduciary duties other than its alleged agreement with Lane to refinance the loan, the Court finds that the breach of fiduciary duty claim is barred by § 513.33.

### 3. Refusal to Recognize Power of Attorney Under Minnesota Statute Section 523.20

Section 523.20 of the Minnesota Credit Agreement Statute provides a cause of action for refusal to acknowledge an attorney-in-fact's authority to act on a principal's behalf.  The Estate alleges in Count VIII that CMG violated § 523.20 by refusing to acknowledge Christy's authority to act on Lane's behalf as his attorney-in-fact.  CMG moves to dismiss Count VIII, arguing that Lane's power of attorney did not comply with the threshold requirements for an action pursuant to § 523.20.

Section 523.20 has six criteria that must be met before a party will be "liable to the principal and to the principal's heirs, assigns, and representatives of the estate of the principal in the same manner as the party would be liable had the party refused to accept the authority of the principal to act on the principal's own behalf."  Minn. Stat. § 523.20. Only the first two criteria are pertinent here: an action may be brought against "[a]ny party refusing to accept the authority of an attorney-in-fact to exercise a power granted by a power of attorney which (1) is executed in conformity with section 523.23 or a form prepared under section 523.231; [and] (2) contains a specimen signature of the attorney-in-fact authorized to act . . . ."  *Id.*

Lane clearly complied with the first criterion, because he filled out the Statutory Short Form Power of Attorney contained within § 523.23.  (Compl., Ex. A.)  Instead, the

more relevant requirement for the purposes of Count VII is the second criterion, requiring that the power of attorney must "contain[] a specimen signature of the attorney-in-fact authorized to act." Minn. Stat. § 523.20. The Estate attached a copy of Lane's power of attorney form as Exhibit A to the complaint, so the Court may consider the form on a motion to dismiss. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."); *Potocnik v. Carlson*, 9 F. Supp. 3d 981, 987 (D. Minn. 2014). The power of attorney form has a field for a "Specimen Signature of Attorney-in-Fact," but there is no signature in that space on the form – or anywhere else on the form – belonging to either Christy or Corey D. Lane, Lane's other named attorney-in-fact. (Compl., Ex. A at 18.)

Although the specimen signature requirement appears to be something of a technicality, it is clearly listed as an enumerated prerequisite for recovery under Minnesota Statute § 523.20. Lane satisfied the first criterion by "execut[ing] in conformity with section 523.23" a power of attorney, but without the specimen signature on the form, the Estate is unable to maintain an action under § 523.20 against CMG for refusal to acknowledge Christy's authority to act on Lane's behalf. *CitiMortgage, Inc. v. Akers*, 858 N.W.2d 788, 794-95 n.1 (Minn. Ct. App. 2014). Therefore, the Court will dismiss Count VIII.

## B.       Remedies Stated As Causes of Action

In addition to arguing that several claims are barred by the Minnesota Credit Agreement Statute, CMG also moves to dismiss both Count IV and Count V on the grounds that they do not state a valid cause of action.   Because the Court finds that neither "specific performance" nor "injunction/injunctive relief" is an independent cause of action, the Court will dismiss Counts IV and V of the complaint.   *Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. 11-1708, 2011 WL 3055251, at *2 (D. Md. June 25, 2011) ("Although the complaint contains additional counts for injunctive relief and specific performance, these are remedies and not independent causes of action.").

First, "specific performance is not a cause of action."   *Datatel Solutions, Inc. v. Keane Telecom Consulting, LLC*, No. 12-1306, 2015 WL 411238, *4 (E.D. Cal. Jan. 30, 2015); *Artistic Framing, Inc. v. Hospitality Res., Inc.*, No. 12-6997, 2013 WL 2285797, at *2 (N.D. Ill. May 23, 2013).   Rather, "[s]pecific performance is an equitable remedy which compels performance of a contract."   *In re Landmark Holding Co., Ltd.*, 286 B.R. 377, 385 (D. Minn. 2002).   "Under the 12(b)(6) standard, a request for a specific remedy is not sufficient to state a claim upon which relief can be granted."   *Mielke v. Standard Metals Processing, Inc.*, No. 14-1763, 2015 WL 1886709, at *6 (D. Nev. Apr. 24, 2015) (internal quotation marks omitted).

"As specific performance is not itself a claim, but rather an equitable remedy available to a party who was damaged by another's breach of contract and has no adequate remedy at law, Plaintiff's claim for specific performance must be dismissed . . . ."   *Invensys Inc. v. Am. Mfg. Corp.*, No. 04-3744, 2005 WL 600297, at *9 (E.D. Pa.

Mar. 15, 2005).  The Court would entertain the Estate's specific performance request as a requested remedy for the independent breach of contract action, but as previously explained, the Estate's breach of contract action is barred by Minnesota Statute § 513.33. Further, the Court finds that even if "specific performance" were to be a standalone cause of action, it too would be barred by § 513.33, as it would be based on the underlying agreement between the parties, which was not reduced to a signed writing.  Thus, the Court will dismiss Count IV of the complaint.

For the same reasons, the Court will also dismiss Count V of the complaint, styled as a claim for "injunctive relief."  "'Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted.'" *Scott v. Wells Fargo Bank, N.A.*, No. 10-3368, 2011 WL 3837077, at *11 (D. Minn. Aug. 29, 2011) (quoting *Ryan v. Hennepin Cnty.*, 29 N.W.2d 385, 387 (Minn. 1947)); *Labrant*, 870 F. Supp. 2d at 684 ("[A]n injunction is a remedy, not a cause of action."). Although plaintiffs may "seek such equitable remedies in connection with the other claims in the Complaint," injunctive relief claims are not, standing alone, viable causes of action.  *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008). Accordingly, the Court will dismiss Count V.

### C.    Claims Lacking Sufficient Allegations

### 1.    Unjust Enrichment (Count II)

Count II of the complaint alleges unjust enrichment by CMG.  "To prevail on a claim for unjust enrichment, Plaintiffs will have to prove that Defendants received

something of value, which they were not entitled to, under circumstances that would make it unjust to permit its retention." *Tharaldson v. Ocwen Loan Servicing, LLC*, 840 F. Supp. 2d 1156, 1165 (D. Minn. 2011).  In other words, "a plaintiff must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 857 (D. Minn. 2012) (internal quotation marks omitted).

In this case, the complaint's allegations as to the unjust enrichment claim are that CMG breached an agreement to refinance Lane's mortgage and that, "[a]s a direct and proximate result of Defendant CMG's conduct, Defendant [Flagstar] and Defendant CMG have been unjustly enriched and the Estate has been damaged in an amount that exceeds $50,000.00."  (Compl. ¶ 44.)  The complaint does not specify in what way CMG was unjustly enriched or what benefit it obtained by allegedly breaching the agreement CMG had with Lane, "aside from the cursory allegation that Defendants have received" an unspecified benefit by refusing to accept Lane's power of attorney.  *See Labrant*, 870 F. Supp. 2d at 682.  Thus, the Court will dismiss the Estate's unjust enrichment claim because it does not allege any benefit CMG unjustly obtained and therefore lacks facial plausibility.

## 2.   Equitable Estoppel / Declaratory Judgment (Count VI)

In Count VI, the Estate seeks a declaratory judgment that CMG is estopped from refusing to honor the refinance agreement allegedly entered into by the parties.  "Parties

seeking to invoke the doctrine of equitable estoppel must prove (1) that promises or inducements were made; (2) that they reasonably relied upon the promises; and (3) that they will be harmed if estoppel is not applied." *Pollard v. Southdale Gardens of Edina Condo. Ass'n, Inc.*, 698 N.W.2d 449, 454 (Minn. Ct. App. 2005). Under Minnesota law, the promises by the party against whom equitable estoppel is sought must "amount[] to a representation or a concealment of material facts" to defeat the statute of frauds. *Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 594 (Minn. 1975); *Meshbesher & Spence, Ltd. v. Sprint Spectrum, L.P.*, No. 03-3434, 2004 WL 2801590, at *4 (D. Minn. Nov. 19, 2004).

The Estate's equitable estoppel claim is based on the argument that the parties entered into a contract to refinance Lane's mortgage loan, CMG refused to accept Christy's power of attorney to finalize the transaction, and the Estate has been harmed as a result because it cannot afford the monthly payments and will likely lose the property. (Compl. ¶¶ 77-85.)

Although the Estate's claim does not specify what promises CMG allegedly made to Lane or Christy on which they reasonably relied to their detriment, the Court will construe Count VI as alleging that CMG approved the transaction, which CMG then violated by refusing to finalize the refinancing transaction.[5] Critically absent from the complaint is any allegation of reliance by Christy or Lane on Koelliker's or CMG's

---

[5] The Court notes, however, that the email exchange between Koelliker and Christy during the refinancing negotiations shows that CMG consistently maintained that it would not accept Christy's general power of attorney and that the transaction would not be finalized without Lane's action or a new, specific power of attorney. It was, instead, Koelliker who led Christy to believe the loan was approved. (Compl., Ex. B at 23-26.)

alleged promises.  In fact, Christy appeared to accept that the loan could not be closed when she emailed Koelliker on October 10, stating, "If [the lack of a specific power of attorney] is a problem, you can wait to close the loan when Dad is able.  He may not be able for weeks depending on how his recovery progresses."  (Compl., Ex. B at 23.) When Koelliker advised Christy she should obtain a specific power of attorney from Lane, Christy expressly elected not to do so and responded, "We will contact you after Dad can close the loan."  (*Id.*)  At that point, it appears that she was aware CMG would not finalize the transaction without a specific power of attorney, and she chose to wait rather than take steps to procure it.

The Court finds that there is no indication Christy or Lane relied on a promise that CMG would refinance the loan without further action by Lane.  Further, there are no allegations in the complaint that CMG acted in a way that concealed material facts or was fraudulent.  Therefore, the Court will dismiss Count VI for failure to state a plausible claim upon which relief may be granted.

## III.   FLAGSTAR'S MOTION TO DISMISS

Flagstar moves to dismiss on the grounds that the complaint does not allege any wrongdoing by Flagstar.  Flagstar is named in three of the Estate's claims: unjust enrichment (Count II), injunctive relief (Count V), and breach of fiduciary duty (Count VII).  Because the Court finds that the complaint does not allege any wrongful actions on Flagstar's part, the Court will grant Flagstar's motion to dismiss in its entirety.

### A.     Unjust Enrichment

The paragraphs describing the basis for the Estate's unjust enrichment claim refer to actions taken by CMG, (Compl. ¶¶ 35-43), and then the final paragraph of the claim alleges that "[a]s a direct and proximate result of Defendant CMG's conduct, [Flagstar] and Defendant CMG have been unjustly enriched and the Estate has been damaged in an amount that exceeds $50,000.00," (*id.* ¶ 44).   There are no allegations as to any promises Flagstar made to Lane or Christy, nor are there any allegations as to what benefit Flagstar might have received from any promises CMG made to Christy or Lane.

Under Minnesota law, "to prevail on a claim of unjust enrichment, a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly enriched the defendant in a manner that is illegal or unlawful." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012); *Issaenko v. Univ. of Minn.*, --- F. Supp. 3d ---, 2014 WL 4954646, at *29 (D. Minn. 2014).   The Estate does not allege an implied-in-law or quasi-contract between the Estate and Flagstar or specify what benefit Flagstar allegedly received.   Even more importantly, the complaint does not identify how Flagstar obtained that benefit in an unlawful manner. Even if the Court accepts as true the conclusory allegation that Flagstar was enriched through CMG's refusal to refinance the loan, "unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."   *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).

Accepting as true all facts stated in the complaint, the Court finds that there are insufficient allegations to support a finding that Flagstar was unjustly enriched through wrongdoing.  Thus, the Court will dismiss Count II as to Flagstar.

## B.     Injunctive Relief

The Estate's claim for injunctive relief makes several allegations targeting CMG's conduct, (*id.* ¶¶ 66-74), and then the final paragraph of Count V requests "an Order from this Court enjoining **any of the Defendants** from commencing any foreclosure action and from taking any other action to deprive the estate of any rights to the Property to prevent the Estate from suffering irreparable harm while this action is pending," (*id.* ¶ 75 (emphasis added)).  As previously explained, "injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  *Scott*, 2011 WL 3837077, at *11.

Even if "injunctive relief" were an independent cause of action, the Estate's claim for injunctive relief does not allege any wrongful action by Flagstar justifying such relief.  Indeed, the Estate appears to concede that Flagstar has done nothing warranting injunctive relief but rather was included as a defendant because "the Estate will eventually assert claims against Flagstar if Flagstar proceeds with the impending sheriff's sale.  Dismissing Flagstar as a defendant will force the Estate to file a motion to amend the complaint in the future to bring Flagstar back [into] this case."  (Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss at 12, Sept. 26, 2014, Docket No. 23.)  Because "injunctive relief" is not an independent cause of action, and the complaint alleges no wrongdoing by

Flagstar for which an injunction could be granted, the Court will dismiss Count V as to Flagstar.

### C.    Breach of Fiduciary Duty

As with Counts II and V, the Estate's breach of fiduciary claim in Count VII alleges wrongdoing only by CMG.  Specifically, the claim alleges that CMG owed and breached fiduciary duties to Lane and the Estate.  The final paragraph of the claim then alleges that "[a]s a direct and proximate result of **Defendants'** actions, Plaintiff has been damaged in an amount that exceeds $50,000.00."  (*Id.* ¶ 97 (emphasis added).)

"The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." *Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) (internal quotation marks omitted); *Burgmeier v. Farm Credit Bank of St. Paul*, 499 N.W.2d 43, 51 (Minn. Ct. App. 1993) (finding that a fiduciary "relationship does not exist as a matter of law" between a lender and a borrower).  Where there are special circumstances involved, the existence of a fiduciary relationship becomes a question of fact, focused on whether "confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (internal quotation marks omitted).

Here, the Estate makes no allegations that there was a fiduciary relationship between Lane or Christy and Flagstar, nor does the Estate allege any facts suggesting that there was influence or superiority on the part of Flagstar leading to a breach of a fiduciary

relationship between Christy or Lane and CMG.  Therefore, the Court will also dismiss Count VII as to Flagstar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant CMG Mortgage, Inc.'s Motion to Dismiss [Docket No. 15] is **GRANTED**.

2.    Defendant Flagstar Bank's Motion to Dismiss [Docket No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  May 11, 2015                          _____
at Minneapolis, Minnesota.                          s/ John R. Tunheim
                                                          JOHN R. TUNHEIM
                                                    United States District Judge